In re: **REZULIN PRODUCTS LIABILITY LITIGATION** (MDL No. 1348)

No. 00 Civ. 2843(LAK).
No. MDL 1348.

United States District Court,
S.D. New York.

Oct. 22, 2001.

Stephen Lowey, Richard W. Cohen, Stacey E. Blaustein, Peter D. St. Phillip, Jr., Lowey Dannenberg Bemporad & Selinger, P.C., White Plains, NY, for Plaintiffs Eastern States Health & Welfare Fund and Louisiana Health Service Indemnity Company, d/b/a Bluecross/Blueshield of Louisiana.

Charles A. Mathis, Middleton, Mathis, Adams & Tate, PC, Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, Ramon Rossi Lopez, Lopez, Hodes, Restaino, Milman, Skikos, Polos, Melvin I. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, Plaintiffs' Executive Committee, David Klingsberg, Maris Veidemanis, Robert Grass, Bruce Koch, Kaye, Scholer, Fierman, Hays & Handler, LLP, for Defendants Parke–Davis and Warner–Lambert Co.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Louisiana Health Service Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana and Edgar Romney, as trustee of Eastern States Health and Welfare Fund (collectively, the "HBPs"), have filed a consolidated class action complaint seeking to recover on behalf of a class of health

benefit plans the amounts the plans paid for Rezulin, the amounts they paid for diagnostic liver tests recommended by defendant Warner–Lambert for Rezulin users, and the amounts the providers expect to pay in the future for such tests. Both Warner–Lambert and the PEC move to dismiss the consolidated class action complaint, principally on the ground that the HBPs cannot possibly establish that the injuries they allegedly suffered were proximate consequences of Warner–Lambert's actions.

## I

In considering such a motion, the Court of course is obliged to accept the truth of the well pleaded factual allegations of the complaint and may dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim which would entitle [it] to relief." [1] Here, the HBPs concededly reimbursed its insureds,[2] or paid directly, for Rezulin which the insureds obtained on the prescription of their physicians. Indeed, the complaint asserts that much of the harm allegedly sustained by the HBPs resulted from Warner–Lambert's aggressive and allegedly deceptive marketing of Rezulin to doctors and consumers.[3] Similarly, the liver tests for which the HBPs allegedly paid and will pay were and will be prescribed for their insureds. Thus, in economic substance the role of the HBPs here is that of indemnitors, and the alleged injuries for which they seek recompense are principally the indirect consequences of the alleged deception of, and other torts allegedly committed against, their insureds.

No doubt recognizing that a claim for damages based on their payments on behalf of their insureds is foreclosed by *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*,[4] the HBPs seek to portray themselves as having been injured directly by the defendants' alleged activities. For example, they claim that the class member health plans were deceived by Warner–Lambert's allegedly deceptive marketing [5] and that they in fact purchased the drug directly by paying pharmacies for drugs provided to their insureds.[6] In the last analysis, however, this effort is unsuccessful.

## II

To begin with, the Second Circuit rejected a closely analogous claim in *Laborers Local 17*. The plaintiff plans in that case sought to recover costs incurred by them as a result of paying health-related costs incurred by their insureds as a result of defendant tobacco companies' alleged deception concerning the health risks of smoking. They contended that their injuries were direct, rather than derivative, because they caused "harm to [plaintiffs'] infrastructure, financial stability, [and] ability to project costs." [7] But the Court of Appeals dismissed that contention, stating:

---

**1.** *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

**2.** Not all of those for whom these plaintiffs incurred costs in respect of Rezulin necessarily were "insureds" in the strict meaning of the term. The Court nevertheless uses the term for the sake of convenience, recognizing that any distinction between insureds, plan participants and plan beneficiaries is immaterial in this context.

**3.** Cpt. ¶¶ 6, 11.

**4.** 191 F.3d 229 (2d Cir.1999).

**5.** *See* Cpt. ¶¶ 11, 17.

**6.** *See id.* ¶¶ 13–14, 17, 19, 122, 132, 143, 145.

**7.** *Laborers Local 17,* 191 F.3d at 239 (quoting *id.,* 7 F.Supp.2d at 285) (internal quotation marks omitted).

"Ultimately, however, whether plaintiffs' injuries are labeled as 'infrastructure harm' or 'harm to financial stability,' their damages are entirely derivative of the harm suffered by plan participants as a result of using tobacco products. Without injury to the individual smokers, the Funds would not have incurred any increased costs in the form of payment of benefits, nor would they have experienced the difficulties of cost prediction and control that constituted the crux of their infrastructure harms. Being purely contingent on harm to third parties, those injuries are indirect. Consequently, because defendants' alleged misconduct did not proximately cause the injuries alleged, plaintiffs lack standing to bring RICO claims against defendants."[8]

So too here. Putting aside the question whether the HBPs "bought" Rezulin, the crux of their complaint is that Warner–Lambert marketed a defective product for use by their insureds, that it failed to disclose information undermining implicit or explicit representations as to safety, and that the demand for the product—and thus the payments the HBPs made to provide the drug to or to reimburse its insureds for it—were higher than they would have been absent the alleged torts. Thus, absent the alleged misconduct vis-a-vis the insureds and their health care providers, the HBPs would not have been injured. Accordingly, *Laborers Local 17* controls here, and the complaint must be dismissed.

The same result would follow even if *Laborers Local 17* were not controlling in this case. In *Holmes v. Securities Investor Protection Corp.,*[9] the Supreme Court articulated three factors relevant to the determination whether the plaintiff there had alleged facts sufficient to establish proximate cause. All three factors cut against the HBPs here.

The first *Holmes* factor is that "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors."[10] This factor favors Warner–Lambert even more strongly here than it favored the defendants in *Laborers Local 17*. Even assuming, as plaintiffs allege, that Rezulin harmed some individuals, it appears to be common ground that it did not harm, and indeed benefitted, a great many. Certainly the HBPs have no claim to recover the cost of providing the drug to patients who were not harmed. So the question whether the HBPs were injured, and to what extent, depends upon whether each insured for whose Rezulin they paid benefitted from or was harmed by Rezulin, a matter that will turn on the individual proof as to each patient for whom it was prescribed.

The second *Holmes* factor is that indirect claims "would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries."[11] In view of the fact that the HBPs are essentially financial intermediaries which, in one way or another, doubtless passed on all or much of the costs they incurred to employers and perhaps even to insureds themselves, the apportionment problems that would be created by allowing the HBPs to sue here would be monumental.

**8.** *Laborers Local 17,* 191 F.3d at 239.

**9.** 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

**10.** *Id.* at 269, 112 S.Ct. 1311.

**11.** *Id.*

They militate against finding proximate cause.

Finally, *Holmes* stands for the proposition that the ability of directly injured victims to sue on their own behalves, and thus to vindicate the public policies involved, without creating the difficulties engendered by allowing suit by more remote plaintiffs argues strongly against permitting such actions. [12] And surely that factor cuts against the HBPs here. There simply is no reason why the individuals who allegedly were injured by Rezulin cannot recover the costs of the drug and any subsequent diagnostic testing or monitoring.

### III

Accordingly, the motion to dismiss the plaintiffs' consolidated class action complaint is granted.

SO ORDERED.

---

**12.** *See id.* at 269–70, 112 S.Ct. 1311.